Filed 6/8/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ANTHONY DAVIS, | B306575 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BC692726 |
| v. | |
| TYLER RAY HARANO, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James A. Kaddo, Judge. Affirmed.

Engstrom, Lipscomb & Lack, Andrew M. Jacobson, Christopher A. Kanne; The Pirnia Law Group and Ardy Pirnia for Plaintiff and Appellant.

Horvitz & Levy, Lacey L. Estudillo, Karen M. Bray; Gates, Gonter, Guy, Proudfoot & Muench and Gina Y. Kandarian-Stein for Defendant and Respondent.

_____

The jury disbelieved Anthony Davis's claim that a 2017 rear-ender caused him $1.5 million in damages. We affirm.

I

We present the facts in favor of the prevailing party.

In 2016, an accident totalled Davis's car. He retained counsel, sued about pain in his neck and elsewhere, and settled. When his medical care ended in 2016, Davis still was claiming neck pain.

In 2017, Tyler Ray Harano's car made contact with Davis's rear bumper. Photos show only slight damage to Davis's bumper. No airbags went off, both cars were drivable, and Davis walked around the accident scene without discomfort. Davis told Harano there was no need to call the police.

Davis drove himself home. He called his attorney right away but waited five days to seek medical attention. The lawyer was the same one Davis had retained for the 2016 litigation. Counsel recommended Davis go to medical providers who worked on a lien basis, which means they deferred billing demands and charged against Davis's expected recovery from his suit against Harano.

At trial, Harano conceded negligence. Davis told jurors of his suffering. Davis's son, who lived with Davis, testified to corroborate Davis's supposed injuries. The son agreed the lawsuit was like a lottery: "Some people win a lot of money. Some people don't." Davis's son wanted his father to win "a substantial amount of money." When asked if Davis's lawyer told the son "what to say" during his testimony, the son answered, "Yes." The jury awarded Davis nothing. It found the 2017 accident with Harano caused Davis no injury. Davis appealed.

II

Davis launches three ineffective assaults on the verdict.

A

First, Davis incorrectly faults the trial court for refusing to direct a verdict on the issue of causation. Davis told the trial court, as he tells us, that causation was undisputed: that everyone agreed the 2017 accident caused Davis at least *some* injury, so Davis deserved a directed verdict on causation.

This argument is inaccurate. Davis bases this claim—indeed most of this appeal—on the root idea that defense expert Dr. Steven Nagelberg conceded the 2017 accident caused Davis a new neck injury, different from the one Davis claimed from 2016.

Nagelberg did not concede causation. He qualified his statements in a way fatal to Davis's argument. Nagelberg's qualification was that the accident did cause Davis injury *if and only if* you believe Davis was telling the truth about his supposedly new pain.

Nagelberg examined Davis before trial and reported Davis claimed pain at eight on a scale of 10. Nagelberg's own observation contradicted Davis's supposed pain: Davis seemed fine. So Nagelberg's testimony was that Davis said he was suffering pain, and he was, *if you believe Davis*.

The defense told the jury not to believe Davis. It challenged Davis's credibility from the outset, saying he and his lawyer had systematically concocted the case from "a nothing accident." The defense said the photos and Davis's conduct at the scene showed "no one could have been injured in this accident." Davis's lawyer, the defense charged, puffed the whole thing up by referring Davis to lien doctors to incur "attorney-driven medical bills" and to create "a medical build up for litigation purposes."

3

Davis's case, according to the defense, was "an abuse of the system." The defense perspective challenged Davis's credibility.

The jurors adopted the defense perspective. Question two on the verdict form asked, "Was Tyler Harano's negligence a substantial factor in causing Anthony Davis injury?" Jurors answered "no."

In sum, the court correctly denied Davis's motion: the evidence put causation in play. The defense did not concede the issue.

B

Davis argues no substantial evidence supports the defense verdict. This argument misperceives the record, which allowed for skepticism about Davis's credibility. Nagelberg's observations countered Davis's claimed pain. Davis called his attorney before seeking medical attention. The 2016 accident was worse than the 2017 one, and Davis claimed neck pain after that accident, yet no objective record suggested Davis's neck pain ever went away after the 2016 accident. In discovery, Davis did not reveal the 2016 accident caused a neck injury and thus was an alternate explanation for Davis's claim of pain and suffering. Davis's medical witnesses opined the 2017 accident injured him, but Davis had hidden his 2016 accident from them. Substantial evidence supported the verdict. Davis's second argument is mistaken.

C

Third, Davis argues the jury instructions and verdict form led the jury astray, but he invited the error, if error there was. Counsel for Davis and Harano jointly submitted the instructions and the special verdict form. Davis cannot now argue these instructions or this verdict form are cause for

4

reversal.  (See *Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 999–1003.)

Davis unsuccessfully seeks to avoid this doctrine of invited error.  As we have recounted, Davis moved for a directed verdict, which would have taken the issue of causation away from the jury.  Davis tells us he argued both (1) that the issue of causation should not go to the jury and (2) that the jury instruction and the verdict form were incorrectly worded.  The record does not support this.  After losing his motion, Davis did not object to, or seek to amend, the phrasing of either the jury instruction or the verdict form.  Davis did the opposite:  he confirmed these documents were joint submissions to the court.

Davis cites *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, but that case is against him.  That court repeated the principle that a party "would be barred from attacking the specific language of the jury instruction it submitted." (*Id*. at p. 213.)  That principle did not bar the argument in *Mary M.*, where the party made all appropriate objections at every turn.  (*Id*. at pp. 212–213.)  The *Mary M.* principle does apply here.  It means Davis cannot complain about the specific wording he endorsed in the trial court.

This rule requires trial lawyers to identify complaints about specific words in a jury instruction.

This rule makes sense.  You may lose on a general point, but you still must alert the court to particular errors you see in the proposed wording of a jury instruction or a verdict form.  Wording errors can be corrected on the spot, swiftly, and at low cost.  Correcting errors via the appellate process takes more time and effort.  And it is unfair for a party to profit in an appellate court by misleading the trial court.  (*Norgart v. Upjohn Co.* (1999)

5

21 Cal.4th 383, 403.) When a party proposes a jury instruction or a verdict form, then, the trial court is entitled to conclude the wording is unobjectionable. The invited error doctrine gives trial counsel an incentive to be thoughtful and candid at the sensible time.

Davis claims further objections would have been futile, but this is not so. To support such a claim, counsel generally must show it is costly to assert your rights. (E.g., *People v. Hill* (1998) 17 Cal.4th 800, 820–821.) Davis does not make that showing.

## DISPOSITION

We affirm the judgment and award costs to Harano.

WILEY, J.

We concur:

STRATTON, P. J.

HARUTUNIAN, J.*

---

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6